IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. _____

PEDRO VIGIL,

    Plaintiff,

v.

WILLIAM BARR, ATTORNEY
GENERAL OF THE UNITED STATES,
DEPARTMENT OF JUSTICE (FEDERAL
BUREAU OF INVESTIGATION),

    Defendant.
_____/

## **COMPLAINT**

COMES NOW, Plaintiff, PEDRO VIGIL ("VIGIL" or "PETER VIGIL") files this Complaint and sues Defendant, WILLIAM BAR, in his official capacity as Attorney General for the United States, Department of Justice (Federal Bureau of Investigation) ("FBI") for retaliation and interference with the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., ("FMLA") and disability discrimination under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and, in support, he alleges as follows:

## **JURISDICTION & VENUE**

1.    This is an action brought to remedy unlawful employment practices by the FBI pursuant to the FMLA and ADA.

2.    This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

3. VIGIL is *sui juris* and is a resident of Miami-Dade County, Florida.

4. At all relevant times, VIGIL was employed by the FBI and continues to be employed by the FBI in this District.

5. FBI is an "employer" within the meaning of the FMLA, ADA and FCRA.

6. VIGIL was an "employee" and an "eligible employee" as defined by the FMLA.

7. All actions relevant to this Complaint occurred in this District.

## CONDITIONS PRECEDENT

8. All conditions precedent have been satisfied or have been waived.

9. On June 13, 2019, VIGIL filed his Formal Complaint filed with the FBI's EEO Division.

10. On October 7, 2019, VIGIL amended his Formal Complaint to include ADA retaliation with the FBI's EEO Division.

11. On March 6, 2020, the FBI's EEO Division issued its Report of Investigation.

12. As of today's filing, over 180 days have elapsed since VIGIL's Formal Complaint and any amendments thereto.

13. As of today's filing a formal agency decision has not been rendered regarding VIGIL's Formal Complaint or any amendments thereto.

## FACTUAL ALLEGATIONS

*FBI Positions:*

14. Prior to joining the FBI, VIGIL served in the United States Army from 1985-1987 and served in the United States Army Reserves from 1987-1992.

15. VIGIL began his employment with FBI approximately 30 years ago and has worked on numerous high profile cases over the many years of service.

16. VIGIL also received numerous awards and commendations over his years of dedicated service with the FBI.

17. Thereafter, VIGIL entered the FBI on June 25, 1990 as a clerk working as a communications/NCIC operator.

18. In 1994, VIGIL was promoted to Investigative Assistant (later known as Investigative Analyst and Investigative Operations Specialist).

19. In 2000, VIGIL became a supervisor for the Investigative Analysts Unit.

20. In December 2003, VIGIL was promoted to Intelligence Analyst/Miami Division Reports Officer. Since then, VIGIL has served as a Reports Officer/Embedded analyst for the CT, CI, White Collar and Criminal programs.

21. On or about January 2017-December 2018, VIGIL reported to the United States Southern Command ("SOUTHCOM") on a Joint Duty Assignment ("JDA"). VIGIL reported to SOUTHCOM in January 2017, where his supervisor was SSA Craig Harris. At SOUTHCOM, his job responsibilities included frequent liaison with military components, participating in meetings, and other ancillary duties. Frequently, SSA Harris indicated he was pleased with VIGIL's work.

***Suspicion of Disability and Medical Conditions at SOUTHCOM:***

22. In December 2016, VIGIL was slotted for the JDA at SOUTHCOM. However, his report date was delayed by one (1) month as Special Agent in Charge (SAC) George Piro made an unofficial referral for him to enter the Employee Assistance Program (EAP) due to allegations where undisclosed individual(s) advised that VIGIL smelled of alcohol in the morning(s). VIGIL entered the EAP where he was placed under the care of psychologist Dr. Frankel.

23. Also in January 2017, during a hospital stay, VIGIL was advised that there were observations that he may have sleep apnea. VIGIL did not treat or investigate whether he had sleep apnea until years later.

24. In November 2017, VIGIL recalls suffering from fatigue at a meeting—possibly due to his then-undiagnosed sleep apnea.

25. In December of 2017, VIGIL fractured his right wrist.

26. In May 2018, he underwent a hernia surgery. As a result of the injuries/surgery, he took prescription and over-the-counter medication that made him feel drowsy.

27. In July 2018, he fractured his right shoulder. For this injury, upon information and belief, he was prescribed medication to relieve the pain and reduce swelling. Upon information and belief, the medications he took had side effects of causing drowsiness, fatigue, and interference with sleep.

28. From March through September 2018, he was prescribed medication for a stomach infection, which, upon information and belief caused him drowsiness, fatigue and problems sleeping.

29. In the Summer of 2018, possibly May, SSA Harris asked VIGIL if he was taking any medication for hernia surgery or if he had an increase in the medication. During that conversation, SSA Harris told VIGIL that it looked like he was falling asleep in a meeting.

30. In June 2018, VIGIL remembers being verbally counselled by SSA Harris for "looking like" he was falling asleep at a meeting. He told VIGIL that falling asleep in meetings was unacceptable, and VIGIL agreed. Upon information and belief, SSA Harris did not mention alcohol use or suspicion thereof. At any rate, SSA Harris did not send VIGIL to have a breathalyzer test or urinalysis.

***FBI Miami Field Office-Disciplinary Issues as to Attendance:***

31. VIGIL's JDA tour at SOUTHCOM ended on or about November 30, 2018 and he was scheduled to report back to FBI Miami Field Office on December 3, 2018. Due to travel-related delays, he did not arrive back to the United States until November 27, 2018. On or about November 30, 2018, VIGIL called his new Supervisory Intelligence Analyst (SIA), Hector Pesquera, and advised him that he needed to use annual leave on Monday December 3, 2018. This was because VIGIL believed he was suffering from jetlag.

32. On the morning of December 4, 2018, VIGIL went to his prior location in order to gather his belongings, which included retrieving his blue access badge (SACs badge). He believed he needed his SAC badge in order to gain access to his new location at the FBI Miami All Employee Conference (AEC), which he thought was being held at the FBI Miami Office. Unfortunately, he could not gain

5

access to his prior location (SOUTHCOM), since his CAC card expired. VIGIL was unable to get into contact with either SSA Harris or another Analyst in an effort to gain access to his old office.

33. On this same date, VIGIL also had no access to his emails and did not know that the AEC was taking place at the Miramar Civic Center rather than at FBI Miami. At any rate, he then travelled back to FBI Miami where he parked in the visitor's parking lot, since previously planned to meet one of his co-workers to go to the AEC.

34. At this time, and after being unable to get in touch with his co-worker, VIGIL believed that he missed the majority of the AEC. Thus, he decided he would make it up at a later date—which he did at a make-up session.

35. The following day, December 5, 2018, was a Federal Holiday to observe the death of former President George H. W. Bush.

36. VIGIL requested annual leave (AL) for the following date, December 6, 2018, by calling SIA Pesquera. He was advised that SIA Pesquera required that AL must be "preapproved" and not requested the day-of.

37. On December 7, 2018, VIGIL arrived to work at FBI Miami at approximately 9:45 a.m. Since he customarily worked an 8 hour shift, he would typically make up the time by staying later. Unbeknownst to him, SIA Pesquera, disallowed such a practice. Thus, when VIGIL arrived, SIA Pesquera escorted him to Assistant Special Agent in Charge (ASAC) Thomas Jones' office where he was counseled on adhering to office policies and time/attendance. ASAC Jones

6

followed up the meeting on December 10, 2018 with an e-mail. VIGIL confirmed that he would adhere to ASAC Jones' recommendations.

38. In February 2019, VIGIL assisted his sister with the purchase of a new car. On February 7, 2019, he reported to work and left during his lunch hour to facilitate the car purchase. Due to the length of time with completing all the paperwork to purchase the car, VIGIL notified his relief supervisor about the delay and advised him that he need to take the remainder of the day off. VIGIL notified his relief supervisor, because SIA Pesquera was not in the office, and this was the protocol. The relief supervisor, Joe Cooke, sent out a confirming email to me, SIA Pesquera and CRO Persteins regarding his need for AL. Nevertheless, despite this being an unforeseen circumstance, since VIGIL's AL was not "preapproved" by SIA Pesquera, SIA Pesquera placed VIGIL on 4 hours of AWOL rather than allowing him to use AL for that unforeseen absence.

39. On February 13, 2019, VIGIL departed work after lunch and did not tell anyone. VIGIL asked SIA Pesquera if he could make up the time by working over the weekend, whereby SIA Pesquera said "no" and, again, placed VIGIL on AWOL—this time for 3 hours due to his leaving early on February 13, 2019.

40. Due to being frustrated with what he believed was micro-managing and feeling ostracized, on February 14, 2019, VIGIL vented to a colleague, April Jenkins that he was contemplating resigning. Ms. Jenkins encouraged VIGIL not to retire.

7

41. On that same day, VIGIL also spoke with SSIA Cassandra Butler and advised her that he felt targeted and singled out, due to rumors about his drinking alcohol and looking like he was falling asleep at work, coupled with depression. He expressed to her that he was considering resigning.

42. On or about that same date, Jeff Green told me that "Dr. Frankel says [I] was doing very well and complying with treatment".

43. To contemplate his future with the FBI, on February 15, 2019, VIGIL took 8 hours of sick leave to think about his decision to resign and the words of encouragement from Green, SSIA Butler and Jenkins, and concluded that he would not resign; especially, because he truly loved his job and serving his Country.

44. Therefore, he returned to work on February 18, 2019.

***FBI Miami Field Office-Suspicion of Disability:***

45. In January 2019, VIGIL sprained lumbar spine ligaments and received cyclobenzaprine (muscle relaxer).

46. On approximately February of 2019, SSIA Butler confronted VIGIL and issued a managerial referral that he contact EAP due to "rumors" that he "smelled" of alcohol and had "slurred speech". Nevertheless, he was not sent to take either a urine or a breathalyzer test to confirm these "suspicions". Upon information and belief, EAP contacted VIGIL's psychologist, Dr. Frankel, regarding alleged alcohol abuse.

47. A few days later, on February 22, 2019, Dr. Frankel sent VIGIL to undergo urinalysis and breathalyzer tests for alcohol. The physician who administered the tests notified VIGIL that both tests were negative and that no further testing was required.

***FBI Miami Field Office- Treatment for Disability due to Alcohol Issues:***

48. During the night of March 13, 2019, VIGIL had difficulty sleeping and was fatigued the next day.

49. On March 14, 2019, VIGIL drank no more than two (2) alcoholic beverages at lunch. VIGIL fell asleep at his desk. Thereafter, he was escorted to a room and interrogated about drinking alcohol. VIGIL acknowledged he did drink alcohol at lunch.

50. Then, VIGIL was driven to his mother's home, where two agents delivered him and removed his unloaded firearm.

51. Since VIGIL knew he struggled with alcohol, he researched alcohol rehabilitation programs, including a treatment center called "Recovery Unplugged" and notified the FBI that he was undergoing treatment for alcoholism at an inpatient program, which began on March 20, 2019, and lasted for 28 days.

52. The FBI knew or had reason to know that VIGIL was an employee who was entitled to FMLA benefits.

53. FBI knew or had reason to know that VIGIL was an employee who was entitled to reasonable accommodation for his disability.

54. At no point in time did the FBI provide VIGIL with any FMLA paperwork to complete to certify his condition as a serious medical condition, nor did it advise him of his rights under the FMLA.

***Failure to Reinstate:***

55. On April 17, 2019, VIGIL completed his in-patient treatment and received a letter of release, which stated he was deemed fit for duty without limitations.

56. Thereafter, VIGIL advised his EAP counselor that he planned to return to work on April 22, 2019.

57. On that date when VIGIL returned to work at the FBI Miami Field Office, his badge had been deactivated. At any rate, he was escorted and met with ASAC Jones and SIA Pesquera who advised him that the FBI placed him on indefinite suspension until he provided satisfactory documentation from the medical provider that he was fit for duty, as well as notes from his psychological counselor. They also stated they needed to receive a properly executed FD-1118 and was also told that they "hope this [meaning the suspension] did not act as a trigger", which is a discriminatory and callous thing to say to a person who has just successfully completed a substance abuse program. Contemporaneously, they provided him with a notification dated March 14, 2019, of an Office of Professional Responsibility investigation into allegations that he had unexcused unspecified absences (hereinafter, "Investigation Notice").

58. Thereafter, VIGIL was escorted out of the Miami Field Office.

59. Within two days, on or about April 24, 2019, VIGIL provided all of this requested information, including the completed FD-1118.

60. Despite receiving all the requested documents at least as of April 26, 2019, the FBI did not reinstate VIGIL.

61. While on suspension without pay, on May 22, 2019, VIGIL also sought analysis of his possible sleep apnea condition and confirmed that he had extremely severe sleep apnea. As a result he now uses an oxygen machine (CPAP), which has made him more alert and less fatigued.

62. By May 3, 2019, VIGIL exhausted all of his available accrued leave.

63. As a result he received no income from May 3, 2019 until he was reinstated on September 24, 2018.

64. Since he had no form of income, on or about May 2019, VIGIL sought unemployment benefits, but was denied unemployment benefits since the FBI contested his unemployment application by stating he violated safety regulations and by being a threat to health, safety and welfare. After, VIGIL appealed the denial and after no one appeared on behalf of the FBI at the unemployment appeals hearing, VIGIL's request for unemployment compensation was approved.

*Reinstatement:*

65. Due to the FBI's failure to reinstate VIGIL, he retained the undersigned counsel and requested to be reinstated on multiple occasions.

66. In addition to that, VIGIL filed his EEO Formal Complaint of Discrimination alleging disability discrimination on June 13, 2019, and participated in the investigative process.

67. While VIGIL was still on "indefinite suspension" without pay, on or about September 11, 2019, SSIA Butler (who previously encouraged VIGIL to hold off on retiring) emailed him about Early Retirement options. VIGIL relayed to SSIA Butler that he was not interested in retiring early and requested to be reinstated to his position.

68. About a week later, by letter dated September 19, 2019, VIGIL received notice that he would be reinstated, which he received four days later on September 23, 2019.

69. He immediately signed the letter on September 23, 2019 and submitted it, along with an indication that he could return to work as early as September 25, 2019.

70. He returned to work on September 25, 2019, and has not been disciplined for any issues with SIA Pesquera as it relates to his work performance. Rather, VIGIL has received praise for his work product and has been told he is a "valued member" of the Team.

71. His Investigation Notice was, thereafter, amended on or about October 2, 2019, to include an investigation of an allegation that he violated the alcohol use policy on March 14, 2019—which was 202 days prior. As a result, VIGIL amended his Formal Complaint to assert a retaliation claim.

*Continuing Disability:*

72. As of March 16, 2019, the FBI was aware that VIGIL was a protected individual under the ADA, since he was receiving and undergoing treatment for alcoholism.

73. VIGIL has advised the FBI that he still undergoes treatment and therapy for his disabling condition.

74. FBI knew or had reason to know that VIGIL was an employee who was entitled to reasonable accommodation for his disability.

## ATTORNEYS' FEES

75. VIGIL has retained the undersigned counsel and has agreed to pay reasonable attorneys' fees.

## COUNT I: INTERFERENCE IN VIOLATION OF THE FMLA

76. VIGIL re-adopts, incorporates by reference, and re-alleges Paragraphs 1 to 75, as though fully set forth herein.

77. VIGIL was entitled to FMLA leave under 29 U.S.C. § 2601(a)(1) because, among other things, he had to receive treatment for a serious medical condition.

78. As more specifically alleged herein, VIGIL notified FBI that he suffered from a serious medical condition and required medical leave.

79. Despite that, the FBI did not provide VIGIL with any FMLA paperwork or notification of his rights under the FMLA.

80. At any rate, VIGIL entered into a treatment facility and completed his 28 days.

81. Thereafter, he notified the FBI that his return to work date would be April 22, 2019.

82. Upon returning to work, the FBI refused to reinstate VIGIL and placed him on administrative leave pending its receipt of medical forms and information from his medical providers. At that time, it also provided him a written warning related to unexcused absences—without indicating the dates or circumstances surrounding the Investigation Notice.

83. By April 26, 2019, VIGIL provided all the requested paperwork, but the FBI still did not reinstate him.

84. Indeed, the FBI failed to reinstate VIGIL until September 25, 2019—almost half a year since he provided all the requested medical documentation of his disability and medical condition.

85. Then, on October 2, 2019, the FBI amended its Investigation Notice of VIGIL and advised him he was also being investigated for violating the alcohol policy on March 14, 2019—some, 202 days prior.

86. In total, the FBI refused to reinstate VIGIL at the earliest from April 24, 2019 through September 25, 2019.

87. FBI's adverse actions against VIGIL was related to his notification that he required FMLA.

14

88. As a direct and proximate result of the FBI's violations of VIGIL's rights under the FMLA, VIGIL has been injured. His injuries include, but are not limited to, back pay and liquidated damages.

WHEREFORE, as to Count I, VIGIL , demands judgment in his favor against FBI for violation of the FMLA and seeks back pay, compensatory damages, interest, liquidated damages, attorneys' fees pursuant to 29 USCS § 2617, costs, and such other further relief that this Court deems just and equitable.

### COUNT II: RETALIATION IN VIOLATION OF FMLA

89. VIGIL re-adopts, incorporates by reference, and re-alleges Paragraphs 1 to 75, as though fully set forth herein.

90. VIGIL was entitled to FMLA leave because, among other things, he had to receive treatment for a serious medical condition.

91. As more specifically alleged herein, VIGIL engaged in statutorily protected activity when he notified FBI that he suffered from a serious medical condition and required medical leave.

92. Within approximately 30 days of notifying FBI that he suffered from serious medical conditions, the FBI placed him on unpaid leave and provided him with its Investigation Notice regarding unexcused unspecified absences.

93. FBI's adverse treatment of VIGIL was due to his assertion of his FMLA rights.

15

94. As a direct and proximate result of the violations of VIGIL's rights under the FMLA by FBI, VIGIL has been injured. His injuries include, but are not limited to, back pay and liquidated damages.

WHEREFORE, as to Count II, VIGIL, demands judgment in his favor against FBI for violation of the FMLA and seeks back pay, compensatory damages, interest, liquidated damages, attorneys' fees pursuant to 29 USCS § 2617, costs, and such other further relief that this Court deems just and equitable.

## COUNT III: DISCRIMINATION IN VIOLATION OF ADA

95. VIGIL re-adopts, incorporates by reference, and re-alleges Paragraphs 1 to 75, as though fully set forth herein.

96. At all relevant times, VIGIL was a qualified individual with a disability, or alternatively, was perceived by the FBI as being disabled.

97. VIGIL requested reasonable job accommodations from FBI in light of his disability, including but not limited to treatment for his disability and reinstatement upon completion of such treatment.

98. FBI refused to accommodate his disability.

99. FBI adversely treated VIGIL following his completion of medical treatment and with full knowledge that his treatment continued.

100. As a direct and proximate result of the violations of the ADA by FBI, VIGIL has been injured. His injuries include, but are not limited to, back pay, front pay, compensatory damages, and humiliation.

101. FBI's violation of the anti-discriminatory provisions of the ADA was in direct contravention of the ADA.

WHEREFORE, as to Count III, VIGIL respectfully requests that this Court award him back pay, front pay or reinstatement, compensatory damages, interest, attorneys' fees pursuant to 42 USC § 12117(a) and 42 USC § 2000e-5(k), costs and any other such relief this Court deems just and equitable.

## COUNT IV: RETALIATION IN VIOLATION OF ADA

102. VIGIL re-adopts, incorporates by reference, and re-alleges Paragraphs 1 to 75 and 96-100, as though fully set forth herein.

103. On or about June 13, 2019, VIGIL filed a Formal Complaint with the FBI's EEO Office for disability discrimination.

104. Thereafter, on or about September 19, 2019, the FBI inquired whether VIGIL would want to retire early.

105. After declining and stating he wanted to continue working for the FBI, the FBI finally reinstated VIGIL on September 25, 2019.

106. Then, on October 2, 2019, the FBI amended its Investigation Notice of VIGIL to include allegations that he violated the alcohol use policy.

107. Thereafter, VIGIL amended his Formal Complaint with the FBI's EEO Office to include a retaliation claim.

108. As a direct and proximate result of the FBI's violations of the ADA by FBI, VIGIL has been injured.

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | F: 877.464.7316

109. FBI's violation of the anti-discriminatory provisions of the ADA was in direct contravention of the ADA.

WHEREFORE, as to Count IV, VIGIL respectfully requests that this Court award him back pay, front pay or reinstatement, compensatory damages, interest, attorneys' fees pursuant to 42 USC § 12117(a) and 42 USC § 2000e-5(k), costs and any other such relief this Court deems just and equitable.

### **JURY TRIAL DEMAND**

Plaintiff, PETER VIGIL, demands a trial by jury on all issues so triable.

Dated this 4th day of April 2020.

                           */s/ Gina Cadogan*
                          GINA MARIE CADOGAN, Esq.
                          Fla. Bar: 177350
                          CADOGAN LAW
                          300 S. Pine Island Rd., Suite 107
                          Plantation, FL 33324
                          Tel: 954.606.5891
                          Fax: 877.464.7316
                          Email Address: gina@cadoganlaw.com
                          2ndary Email: kathy@cadoganlaw.com